# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| CURTIS BOWMAN,<br><br>       Plaintiff,<br><br>   v.<br><br>WARDEN DILWORTH, JOHN DOE CURRENT COMMISSIONER OF DOC, JOHN DOE-1, JOHN DOE-2, JOHN DOE-3, JOHN DOE-4, JOHN DOE-5, AND JOHN DOE-6,<br><br>       Defendants. | Case No. 3:20-cv-756 (CSH)<br><br>JUNE 22, 2021 |

## INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge:**

      Plaintiff Curtis Bowman ("Bowman"), a convicted prisoner confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut ("MWCI") and proceeding *pro se*, has filed a civil rights action pursuant to 42 U.S.C § 1983. *See generally* Doc. 1 ("Compl."). Bowman seeks to sue Warden Dilworth; John Doe Current Commissioner of DOC; and Correctional Officers John Doe-1, John Doe-2, John Doe-3, John Doe-4, John Doe-5, and John Doe-6 (collectively, the "John Doe Correctional Officers," and with Warden Dilworth and John Doe Current Commissioner of DOC, "Defendants"). *Id*. Bowman claims that on November 30, 2017, while he was confined at Garner Correctional Institution ("Garner CI"), the John Doe Correctional Officers used excessive force against him in violation of his rights under the Eighth Amendment to the federal Constitution. *Id*. The Court now reviews Bowman's Complaint to determine whether his claims may proceed under 28 U.S.C. § 1915A. For the following reasons, the Complaint is DISMISSED in part.

## I. FACTUAL ALLEGATIONS

The following facts are derived from Bowman's Complaint, as well as the exhibits appended thereto.

On November 30 or December 1, 2017,[1] while Bowman was confined at Garner CI, Correctional Officers John Doe-1 and John Doe-2 escorted Bowman back from an appointment with a psychiatrist. Compl. at 4 ¶ 9. As Correctional Officers John Doe-1 and John Doe-2 placed Bowman in his cell, they slammed the cell door on his leg. *Id.* at 4 ¶ 10. Bowman screamed in pain. *Id.* at 4 ¶ 11. Correctional Officers John Doe-1 and John Doe-2 responded by pushing harder on the door, rather than by attempting to release or open the door. *Id.*

Correctional Officers John Doe-1 and John Doe-2 then pulled Bowman out of his cell and ordered him not to move. *Id.* at 4 ¶ 12. Bowman complied with the order and Correctional Officer John Doe-1 "called a code." *Id.* at 4 ¶¶ 12–13. Correctional Officer John Doe-3 placed a spit veil over Bowman's head. *Id.* at 4 ¶ 14. Correctional Officers John Doe-1 and John Doe-2 pulled Bowman to the floor. *Id.* at 4 ¶ 15. As Bowman lay on the floor, while his face was covered by the spit veil, an officer turned Bowman's head from side to side to permit Correctional Officer John Doe-4 to spray Bowman multiple times with a chemical agent. *Id.* at 4–5 ¶¶ 16–17. After the first burst of the chemical agent reached Bowman's face, he was blinded and could not breath. *Id.* at 5 ¶ 19. Bowman alleges that he "never disobeyed the direct order not to move." *Id.* at 5 ¶ 18.

Correctional officers subsequently escorted Bowman to a shower, but they did not turn on the water. *Id.* at 5 ¶ 21. Afterwards, officers escorted Bowman back to his cell and beat him until he lost consciousness. *Id.* at 5 ¶ 22. No correctional officer brought Bowman to the

---
[1] The Level 1 Grievance appended to Bowman's Complaint reflects that the conduct at issue took place on December 1, 2017, while in the body of his Complaint Bowman asserts that the events transpired on November 30, 2017. *Compare* Compl. at 3 ¶ 9, *with id.* at 9.

2

medical department to be evaluated after this beating. *Id.* at 5 ¶ 23. Bowman states that he did not receive a disciplinary ticket in connection with the incident. *Id.* at 5 ¶ 24.

On December 29, 2017, Bowman filed a Level 1 Grievance regarding the incident. *Id.* at 9. On February 21, 2018, Warden Dilworth concluded, based on the review of the incident, that the force used was appropriate. *Id.* Warden Dilworth therefore denied the grievance. *Id.* On February 26, 2018, Bowman filed a Level 2 appeal of the decision by Warden Dilworth. *Id.* at 11. On March 9, 2018, a district administrator found that Warden Dilworth's response to the grievance was appropriate and denied the appeal. *Id.*

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)–(2). Although detailed allegations are not required, a complaint must "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98,

3

104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: a *pro se* plaintiff's complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court may not "invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).

### III.     ANALYSIS

Bowman brings his claims pursuant to 42 U.S.C § 1983. Compl. at 2 ¶ 1. Bowman asserts that Defendants violated his Eighth Amendment right "to be free from cruel and unusual

4

punishment . . . through the use of excessive force causing Bowman pain, suffering, physical injury and emotional distress." *Id.* at 6 ¶ 30. Bowman seeks monetary damages as well as declaratory relief against the John Doe Correctional Officers in both their official and individual capacities. *See id.* at 6 ¶ 31, 7 ¶¶ 34–37. Bowman sues John Doe Current Commissioner of DOC in his official capacity only, and he seeks only declaratory and injunctive relief against him. *Id.* at 6 ¶ 32. It is not clear to the Court what claims are brought against Warden Dilworth, nor in which capacity they are brought, nor for what form of relief.

### a. Claims Against Warden Dilworth

In the section of his Complaint describing the parties to this action, Bowman describes Warden Dilworth as having been responsible for the overall operation of Garner CI and the welfare of inmates confined there. *Id.* at 2 ¶ 4. However, Bowman does not subsequently refer to Warden Dilworth in those sections of the Complaint setting forth his factual allegations, the legal claims he asserts, and the relief he seeks. Warden Dilworth only appears in the grievance and administrative appeal papers appended to Complaint. *Id.* at 9–11. From these, it merely appears that Warden Dilworth reviewed and denied Bowman's grievance against the John Doe Correctional Officers, several weeks after the incident involving their alleged use of excessive force against Bowman. *Id.* at 9.

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit considered the impact of the Supreme Court's decision in *Iqbal* on the standard to be applied to determine supervisory liability in a section 1983 action. *Id.* at 615–18. The Second Circuit concluded that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions,

5

has violated the Constitution.'" *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676). Thus, "[t]he violation must be established against the supervisory official *directly*." *Id.* (emphasis added).

Bowman's Complaint contains no allegations that Warden Dilworth either was present during or otherwise was involved in the use of force that occurred on November 30 or December 1, 2017. By the time it appears Warden Dilworth received Bowman's grievance—*i.e.*, on January 3, 2018—the incident of which he complained was long over and complete. *See* Compl. at 9. In short, there is no matter in the Complaint plausibly indicating that Warden Dilworth was directly involved in the purported violation of Bowman's right to be free from excessive use of force. Bowman's failure to plausibly plead such a direct connection cannot sustain claims against a prison supervisor such as Warden Dilworth. *See, e.g*, *Crispin v. Roach*, No. 3:20-cv-1184 (KAD), 2020 WL 6263185, at *8 (D. Conn. Oct. 23, 2020) (dismissing excessive force claims against prison supervisory officials, including prison warden, where there were no allegations that any official "was present for or directly involved in the use of force" against plaintiff, but rather only allegations that defendants did not take steps to remedy the alleged use of force after it had occurred when they denied plaintiff's grievances); *Neary v. Naqvi*, No. 3:14-cv-1631 (VLB), 2017 WL 320547, at *14 (D. Conn. July 27, 2017) (dismissing deliberate indifference claims against prison warden defendants where the body of the amended complaint made no mention of any of the wardens, much less any plausible involvement by wardens in provision of medically inappropriate diet to plaintiff).

Therefore, all claims for relief asserted against Warden Dilworth are DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

6

### b. Claims for Declaratory Relief

Bowman seeks a declaration that Defendants violated his Eighth Amendment rights when the John Doe Correctional Officers used excessive force against him on November 30 or December 1, 2017. Compl. at 7 ¶ 34.

Ordinarily, "[t]he Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation marks and citation omitted). Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), however, "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be the subject of injunctive or declaratory relief in federal court." *Berman Enterprises, Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir. 1993) (citation omitted). Even though the doctrine depends upon a legal fiction, *see Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011), it permits the federal courts to hear suits against state government officials challenging "implementation of state policy or custom" where such suits otherwise could not be maintained. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

*Ex parte Young* provides litigants with a powerful legal tool, but it is one subject to a number of important limitations. As relevant here, retrospective relief—*e.g.*, a declaration that a state officer defendant violated a plaintiff's rights at some time in the past—is barred by the Eleventh Amendment. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief" (citations omitted)); *Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses*

*Comm'n*, 632 F. Supp. 2d 185, 187–88 (D. Conn. 2009) ("A plaintiff may use *Ex parte Young* to seek injunctive or declaratory relief, . . . but the relief must address an ongoing or threatened violation of federal law and be prospective only." (citing *W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 21 (2d Cir. 2004) and *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000))). "The line between prospective and retrospective relief is drawn because '[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law,' whereas 'compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.'" *Ward*, 207 F.3d at 119 (quoting *Green*, 474 U.S. at 68).

In the case at the bar, Bowman currently is confined at MWCI, and he alleges no ongoing violation of his rights while incarcerated there. His request for a declaration that Defendants violated his rights under the federal Constitution in the past, while he was imprisoned at Garner CI, therefore falls within the Eleventh Amendment's scope and is barred. *See, e.g., Reynolds v. Semple*, No. 3:19-cv-1226 (KAD), 2019 WL 5394675, at *3 (D. Conn. Oct. 22, 2019) (dismissing claim for declaratory relief against defendants where declaration sought related to past alleged violation of plaintiff's Eighth and Fourteenth Amendment rights).

Furthermore, if Bowman were to prevail on his Eighth Amendment claims, the Court necessarily would determine that the Defendants had violated his constitutional rights. Thus, a separate award of declaratory relief is unnecessary. *See, e.g., Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action. . . . [and] is dismissed." (citation omitted)).

8

Accordingly, all claims for declaratory relief against Defendants are DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

   c. **Claims for Injunctive Relief Against John Doe Current Commissioner of DOC**

Bowman states that he is suing John Doe Current Commissioner of DOC[2] in his official capacity alone, and only for declaratory and injunctive relief. Compl. at 3 ¶ 5, 6 ¶ 32. Bowman further states that John Doe Current Commissioner of DOC is being sued because "[P]laintiff is seeking extended medical care of his injur[ies] and has been transferred from the facility where the incident took place therefore only the current acting commissioner can order the extended medical care . . . sought by [P]laintiff." *Id.* at 3 n.1.

As noted *supra*, the doctrine of *Ex parte Young* permits a plaintiff to seek prospective relief—including injunctive relief—against state officers in their official capacities to address an ongoing violation of federal law. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007) ("[A]pplication of the *Young* doctrine is straightforward: A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" (quoting *Verizon Maryland Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) and *In re Dairy*

---

[2] The Court takes judicial notice that the current Commissioner of Connecticut's Department of Correction is Angel Quiros. *See* Connecticut State Department of Correction, https://portal.ct.gov/DOC (last visited June 4, 2021); Press Release, Office of Governor Ned Lamont, Governor Ned Lamont Appoints Angel Quiros to Serve as Commissioner of the Department of Correction (Sept. 2, 2020), https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2020/09-2020/Governor-Lamont-Appoints-Angel-Quiros-To-Serve-as-Commissioner-of-the-Department-of-Correction. Bowman has pleaded the Commissioner as a John Doe defendant because "[t]he person holding the office of Commissioner . . . has changed several times since the date of this incident." Compl. at 3 n.1. Such pleading is unnecessary: under Rule 25(d) of the Federal Rules of Civil Procedure, when a party in an official capacity resigns or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party, regardless of the party's failure to so move or to amend the case caption. Fed. R. Civ. P. 25(d). The Court may also order the substitution of a party at any time. *See Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018); *Tanvir v. Tanzin*, 894 F.3d 449, 459 n.7 (2d Cir. 2018).

*Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005)). "Plaintiff need not prove 'personal involvement' of the [state official] to succeed on such a claim." *Mercer v. Schriro*, 337 F. Supp. 3d 109, 137 (D. Conn. 2018). However, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157.

Bowman asserts that, after he was doused with chemical agents and beaten, the John Doe Correctional Officers did not bring him to the medical department for evaluation. Compl. at 5 ¶ 23. Fairly read, Bowman's Complaint also alleges that he is in continuing pain as a result of the alleged assault by the John Doe Correctional Officers. *See id*. at 7 ¶ 33. However, Bowman only asserts in conclusory fashion that he "requir[es] extended medical care that [he] will not receive unless the [C]ourt grants the . . . injunctive relief which [he] seeks." *Id.*

The Court construes Bowman's claim for relief, with respect to John Doe Current Commissioner of DOC, to be one for deliberate indifference to Bowman's serious medical needs. The Supreme Court has determined that deliberate indifference to such medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim of deliberate indifference, a prisoner must allege an act or failure to act by a defendant that evinces a conscious disregard of a substantial risk of serious harm. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996). "There are thus both subjective and objective components to the 'deliberate indifference' standard. . . . Objectively, the alleged deprivation must be 'sufficiently serious.' . . . Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer

serious harm as a result of his actions or inactions." *Young v. Choinski*, 15 F. Supp. 3d 172, 182 (D. Conn. 2014) (citations omitted).

For the purposes of this Initial Review Order, the Court will construe Bowman's allegations of his pain as satisfying the objective prong of the deliberate indifference inquiry. *See Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977) ("[T]he Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain."). Nevertheless, Bowman's Complaint contains no facts pertaining to the deliberate indifference inquiry's subjective prong. Bowman makes no allegations related to any deprivation of medical care at either Garner CI or MWCI at any time after November 30 or December 1, 2017, much less any such further deprivations evincing conscious disregard of a substantial risk of serious harm to him. Indeed, there are no allegations that Bowman himself ever sought or requested medical care of any type after the alleged assault by the John Doe Correctional Officers. Furthermore, there are no factual allegations plausibly tying Bowman's being deprived of any medical treatment to a policy or practice of the Connecticut Department of Correction. Therefore, the Court cannot plausibly conclude that Bowman suffers from "an ongoing violation of federal law" for which John Doe Current Commissioner of DOC may be sued and that could permit an award of prospective injunctive relief. *See Smith v. Martuscello*, 602 F. App'x 550 (2d Cir. 2015) (affirming dismissal of inmate's amended complaint with respect to prison supervisory officials, because although the "amended complaint contain[ed] allegations of widespread abuse in the prison system, and at Coxsackie in particular, it contain[ed] no allegations that the abuse was the result of a policy or custom of deliberate indifference to inmate abuse").

Accordingly, all claims for injunctive relief against John Doe Current Commissioner of DOC are DISMISSED. *See* 28 U.S.C. § 1915A(b)(1).

### d. Claims for Official Capacity Monetary Relief

Bowman seeks both compensatory and punitive damages from the John Doe Correctional Officers. Compl. at 7 ¶ 36–37. To the extent that he sues the Defendants in their official capacities—*see id.* at 6 ¶ 31—those requests for monetary damages are barred by the Eleventh Amendment. *See, e.g.*, *Graham*, 473 U.S. at 169–70 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity).

Therefore, all claims seeking money damages from Defendants in their official capacities therefore are DISMISSED. *See* 28 U.S.C. § 1915A(b)(2).

### e. Individual Capacity Claims for Damages Against John Doe Correctional Officers

As described earlier in this opinion, Bowman alleges that Correctional Officers John Doe-1 and John Doe-2 slammed the cell door on his leg, pushed against the door instead of attempting to release or open it, and pulled him out of the cell and onto the floor. Correctional Officer John Doe-3 then placed a spit veil over Bowman's face and Correctional Officer John Doe-4 repeatedly sprayed Bowman in the face as he lay on the ground.

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 US. 1, 4 (1992)). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9); *see also Sims v. Artuz*, 230 F.3d 14, 22 (2d

Cir. 2000) ("We recognize . . . that '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights . . . .'" (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973))); *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) ("[A] *de minimis* use of force will rarely suffice to state a constitutional claim."). In order to state a claim for the use excessive force in violation of the Eighth Amendment, an inmate must allege an objective element—a sufficiently serious use of force—as well as a subjective element—namely, that the use of force was "wanton," in light of the circumstances under which force was used. *See Harris v. Miller*, 818 F.3d 49, 63–64 (2d Cir. 2016) (per curiam).

With respect to the objective element, an inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). The extent of the inmate's injuries as a result of the defendant's conduct is not dispositive of whether the force used was excessive. *See Wilkins,* 559 U.S. at 38 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."); *Hudson*, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present).

With respect to the subjective element, the Court assesses "whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003). In so doing, the Court "must examine several factors including: the extent of the injury and the mental state of the defendant,

as well as 'the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'" *Id.* (quoting *Romano*, 998 F.2d at 105).

Turning to the case at the bar, the Court finds that Bowman's allegations state a plausible excessive force claim against Correctional Officers John Doe-1, John Doe-2, John Doe-3, and John Doe-4. Bowman asserts that he did not disobey any order given by any of the officers, and "[c]ourts in this Circuit have repeatedly held that a prison official's use of mace or chemical spray against a compliant prisoner satisfies both the subjective and objective elements of an Eighth Amendment excessive force claim; the subjective element is satisfied in such cases because spraying a compliant prisoner with mace cannot be characterized as an attempt to maintain or restore discipline, and the objective element is satisfied where a prisoner alleges that he suffered injuries beyond the immediate discomfort that results from being sprayed with mace." *Parsons v. City of New York*, No. 17-CV-2707 (MKB), 2017 WL 2656135, at *3 (E.D.N.Y. June 19, 2017) (collecting cases).

Although Bowman does not specifically reference Correctional Officer John Doe-5 or Correctional Officer John Doe-6, he alleges that after returning him to his cell without decontaminating him from the effects of a chemical agent, correctional officers beat him until he lost consciousness. The Court will liberally construe these allegations to be asserted against all of the John Doe Correctional Officers. Beating an inmate in his cell until he loses consciousness, after having subdued him using a chemical agent and having failed to decontaminate him from the effects of that chemical agent, plausibly constitutes an excessive use of force in violation of the Eighth Amendment.

Finally, the Court construes Bowman's complaint as additionally asserting a claim of deliberate indifference against the John Doe Correctional Officers. *See* Compl. at 6 ¶ 30. "The same standards apply to a claim of deliberate indifference to serious medical needs on the part of nonmedical prison personnel. To establish such a claim plaintiff must prove that prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment." *Hodge v. Coughlin*, No. 92 Civ. 0622 (LAP), 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995). As noted *supra*, Bowman alleges that after having been beaten unconscious, he was not brought to the prison's medical department by any of the John Doe Correctional Officers. Bowman's unconsciousness, following his having been exposed to a chemical agent and his having been beaten, plausibly constitutes an objectively serious condition requiring urgent medical attention. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (objective prong of deliberate indifference inquiry "contemplates 'a condition of urgency, one that may produce death, degeneration, or extreme pain'" (quoting *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting))). As for the subjective prong of the deliberate indifference inquiry, Bowman's allegation that the John Doe Correctional Officers entirely failed to transport him for medical treatment plausibly demonstrates the officers' conscious disregard of his serious medical needs.

Accordingly, the Court shall permit Bowman to proceed with the Eighth Amendment excessive use of force claim and the Eighth Amendment deliberate indifference claim against the John Doe Correctional Officers, in their individual capacities only.

## IV. CONCLUSION AND ORDERS

In accordance with the foregoing discussion, the Court enters the following orders:

1. The following claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1)–(2):

    a. All claims against Warden Dilworth;

    b. All claims against John Doe Current Commissioner of DOC; and,

    c. All claims for declaratory relief and for official-capacity monetary relief against the John Doe Correctional Officers.

2. Bowman's Eighth Amendment excessive force claim and Eighth Amendment deliberate indifference claim against Correctional Officers John Doe-1, John Doe-2, John Doe-3, John Doe-4, John Doe-5, and John Doe-6, in their individual capacities, are permitted to proceed, for monetary relief only.

3. The Court informs Bowman that the Clerk cannot serve the complaint on the John Doe Correctional Officers because he has not provided the first or last name for any such Doe defendant. Bowman will have **ninety (90) days** from the date of this order to conduct discovery and file a notice identifying each John Doe defendant by his first name and last name. Bowman is advised to seek the assistance of the Department of Correction's Inmates' Legal Aid Program with this process. The Court will dismiss the claims against any Doe defendant for whom Bowman fails to provide a first and last name within the time specified herein. *See* Fed. R. Civ. P. 4(m).

4. If Bowman changes his address at any time during the litigation of this case, Local Civil Rule 83.1(c)(2) provides that he MUST notify the Court. Failure to do so may result in the dismissal of this case. Bowman must write PLEASE NOTE MY NEW ADDRESS on any such notice that he sends; the Court will not find it sufficient for Bowman to put

the new address on a letter without his indicating that it is a new address. If Bowman has more than one pending case, he should indicate all case numbers in the notification of change of address. Bowman should also notify the defendants or the attorney for the defendants of his new address.

5. Bowman shall utilize the Prisoner E-filing Program when filing documents with the Court. Bowman is advised that the Program may be used only to file documents with the Court. Local Civil Rule 5(f) provides that discovery requests are not to be filed with the Court; discovery requests must be served on the defendants' attorney by regular mail.

6. The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

It is SO ORDERED.

Dated: New Haven, CT
       June 22, 2021

                                  *s/ Charles S. Haight, Jr.*
                                  CHARLES S. HAIGHT, JR.
                                  Senior United States District Judge